We can't get you back here again, bro. Good morning. Please the court. My name is Barry Diller. I represent the appellants, Andrew and Karen Carmen. I respectfully request to reserve four minutes if I may. We have three major points on which we believe the district court in this case made fundamental errors. First, the district court should have granted the Carmens, who were the plaintiffs, a directed verdict with respect to their claim that Trooper Carol, the defendant, had entered their cartilage, specifically their backyard and back deck, which was attached to their home. Without a warrant or any other exception to the requirement for a warrant. That was really stipulated. That doesn't necessarily get you a verdict, but I thought there's no argument here. He admitted he had no warrant. His partner, it wasn't his partner, but the other trooper who arrived there, Roberts, I guess, said they did not have a warrant. And they, I guess, I guess you're saying you wanted the judge to tell the jury that where they went was included within the cartilage, is that it? Yes. I felt that on these undisputed facts that they agreed with, that we win. Well, I thought counsels at trial did agree that that was the cartilage. That wasn't the issue. Right. That's right. So that wasn't the issue, frankly. But that wouldn't get you a directed verdict. I guess maybe I'm not understanding. You're saying that you wanted the judge to have instructed the jury that where Officer Carroll went was the cartilage, not that that was a directed verdict. The verdict would be something that happened after that, something more than that. No, we wanted a verdict. I understand that. That's kind of why you're in the case. Right. We asked very specifically for a directed verdict. The jury would still have to assess damages. So we have to vacate the current judgment in order to bring the process back to when you made a motion for a directed verdict. That's right. You're not asking for a new trial. I'm sorry? You're not asking for a new trial. You're asking for damages on this record? Well, no, I would need a new trial to assess damages. Okay. But I believe that the appropriate remedy here would be a remand with a direction to enter a verdict for the plaintiffs. Vacate the current verdict. Vacate the current verdict and judgment. And enter a judgment in your favor. That's correct. A directed verdict. That's correct. With a trial to determine the amount of the judgment. That's what you're asking for. Yes. And that is because the facts weren't disputed that Trooper Carroll, in the absence of warrant, consent, or exigency, chose to go to the backyard, to the back deck, instead of to the front where there is, where societal norms... That's where I'm losing you. Didn't he have a right? There are cases that hold it. You can go through the back door if that's the entrance that's used as a regular entrance. The cases which say that... First of all, the Third Circuit has said that might be the case. That might be the case. That might be the case. Okay. But they all say... Why would you get a verdict? Because all of those cases, even the most liberal toward the police in permitting that say, first, the police must go to the front unless there is some tangible reason why the front is obviously not where... Well, he said... That's what he said. He said that there were cars parked along the side and the back. That's right. So, for instance, and we have the photographs as part of the record, and I have the original photographs if they will help, show that at the front there is a pathway of paving stones right to the front porch where anyone knows, by virtue of living in this society, if I'm calling on someone, I go to their front door, I knock on the door. The police know that, and every single case says that that's what the police must do. Even in those circumstances where they are subsequently permitted to check the back, it is first where they have come to the front, knocked on the door, and received no answer. If there's any question of fact at all, you don't get the directed verdict, do you? If there's any legitimate question of fact. Are you suggesting that my learned colleague from New Jersey would interject into the record an illegitimate question of fact, even though he's from New Jersey? He wouldn't do that, would he? Despite New Jersey, I'm not suggesting that. I am suggesting if the trooper got on the witness stand, blinked, went like, crossed his fingers, and said there was no front door, that that wouldn't be legitimate. I'm saying that... But, you know, as you approach the house, and they approached the house from, I guess you look at it front ways, they approached it from the left side. Correct. And actually, as I understand the record, the police vehicle made a left turn into the property. Made a right turn. I'm sorry, I see you're correcting me. And that was a paved area where there were some cars parked? Yes, so that, for instance, if... I mean, is it, it's kind of like the door knocker, which is like an invitation, look, this is my front door. When you have a paved area and there are cars that are already parked, aren't you sort of invited to go into that area and park your car there? No, because... Listen to the question that you're saying no to. I'm sorry? Listen, you're answering a question that wasn't asked. The question was, and correct me if I'm wrong, the question was, aren't you invited to go into the area and park your car there? And you're saying no. Oh, yes, you're invited to park your car there, but then you're not invited, after parking, to say, you know what? I'm not going to go to the front. I'm not going to go to the pathway to the front door. I will cut across the grass in the backyard. I will walk onto the back deck, which is attached to a sliding door to the back of the house, and see if anyone's there. The invitation, the societal implicit invitation, does not extend back. Well, does it matter? Hadn't the search already occurred before they got to the point where Mr. Curl came out? Not Mr. Curl. Mr. Carman. Well, the search for the car had already occurred. They'd entered into the garage. There had been a breach, if you will, of the garage. And so first they looked for the car, which they had a license plate and make number, and it wasn't there. Then they look in the car port, which is on the side, after they've made that right turn to be on the left side of the home. Let me ask you, but when they pulled in with the police vehicle, aren't they already in the curtilage area? Well, to the extent that you consider someone's driveway the curtilage, I suppose you could say yes. And when they step out of the car, they're walking on the curtilage area? But all of the cases say, incidentally, the cases are mixed in their language about what is or isn't the curtilage. But assuming the worst for me, that even that driveway or that side parking area is curtilage, the implicit societal norm, which the Supreme Court has recognized and this court has recognized, says, well, doesn't say, well, once you have entered into a parking area, now curtilage is fair game. Nothing of the sort. In fact, when you get in the front door, the door knocker is inside the curtilage. So you've got to go inside the curtilage to get to the doorbell. That's right. So if that is curtilage, that aspect of entry into curtilage is permitted because that's what we do. That's where Girl Scouts come. That's where I knock on my neighbor's door. So there's no dispute that the front door was, the path to the front door was clearly marked that police officer vehicle and police officers, wherever they parked the car, they've got to go back around to the front door and knock there. That's right. That's exactly right. So it's not disputed. And it's not disputed that all of that was there. It's not disputed that they didn't do that. It's not disputed that they walked across the backyard. It's not disputed that they went up the steps to the deck, which is attached to the home. None of that is under dispute. And that's why we said it's not part of this appeal. We actually moved to summary judgment. What if somebody were sitting in that back deck area, just sitting there and police officers pulled up in their vehicle? There is a front door, but they noticed somebody sitting, a male, let's say, on that back porch. Well, they probably wouldn't see it not being able to get into the backyard to see it, but if they could. But they were pretty close where the car was parked to the backyard already. Well, it's not a huge plot. Well, take the hypothetical. Supposing they do happen to see somebody there. Do they still have to go to the front door? Well, I think they could say, hello, and then, you know, judge by reaction. But, in fact, there was no one on the back porch. In fact, there was no one who gave any kind of implicit consent, either by their friendly response, hello, back to you. The police simply decided to look around and go in the back. And the pictures are clear in the appendix, and even clearer in the color photos. There's no path in the back to that deck. There is no path, and those are in these photographs. They can see it's just grass. They chose not to go to the front. Is this more a property trespass type issue, or is it an expectation of privacy issue? Well, it is both. We don't have a state law trespass cause of action because the federal courts would not have jurisdiction over state law claims. There's a whole lot of expectation of privacy in the backyard, isn't there? I mean, it's open to the public. Everybody sees it. It's not open to the public, and the cases are very clear that it is a complete expectation of privacy. I believe that it was the Supreme Court earlier this year in Florida against Jardinis, which basically said that it is psychologically part of the home so that there is that complete expectation of privacy. When you say expectation of privacy, you mean you wouldn't expect people to be snooping around in your backyard, I suppose. Right, right. Especially in Florida, where Jardinis came from. Right, and then when Mr. Carman comes out on his deck, he's entitled to say, get off my property. But in this case, the police did not give him that courtesy and would not get off and would not let him retreat. What's the remedy here now? The remedy that I'm asking from this court? No, from the district court. Well, the remedy would be grant judgment on the entry on the curtilage claim and on the unreasonable seizure claim and instruct the jury that I have found for the plaintiff, you must find for the plaintiff, and now it is your job to assess damages. We don't know why the district court decided the way it did on the directed verdict motion. I think the district court, and if we look at the jury instruction that it crafted on knock and talk, took accurate language from some of the cases that says a police officer might in some circumstances enter the curtilage and so said the district court in its reading said, well, that might be okay. But if you read those cases a little more carefully, it might be okay if at first the police officer went to the front, knocked on the door, received no answer, had some other reason to think the occupants are probably in the back. Maybe he hears music back there or something of that nature. Thank you. You saved quite a bit of time, I think. So thank you. We'll hear from you again. Good morning, Your Honors. Counsel, may it please the Court. I'm Sean Kirkpatrick here with the Pennsylvania Office of the Attorney General here on behalf of Trooper Carroll, and there seems to be perhaps maybe some confusion in the record, so I just want to make one fact clear before I begin. On page 79 of the appendix, Trooper Carroll testified, and I'll just read it quick. We parked the next available spot where we could park our car, which was at the rear of the property, the far rear of the property, and we exited our vehicles at that point. And from where he parked the car, could he see the back porch? Yes, Your Honor. This property was on a, as the jury found, and again this is a jury verdict that is being asked to overturn. This was a, there was the main road where parking was not permitted, and then there was a side street running along the left-hand side. So they turned right, they passed a number of vehicles, and the next available parking spot was at the far rear of the property. They parked in the driveway, basically. It looks like they parked in the area set aside as the driveway. Well, whether it was a side street or a driveway, it extended to the far rear of the property. But to get there, they had to go past the front of the house. Yes, they did, Your Honor, but they couldn't park there. But does parking in the back where you can see the porch excuse you from going through the front door? Yes, Your Honor. Whoa, how in the world, because they're too lazy to walk to the front door? Why? Because the officer would make a decision to park at the side of the house. Oh, well, I'm at the side of the house. This is where I parked my vehicle. I want to exit my vehicle and go to the part which is closest, which is this sliding glass door from which point I can see inside the guy's house, rather than walking around to the front porch. That's what you're arguing? This is the donut argument, I guess. I don't want to exercise and go to the front door. No, Your Honor. The ultimate touchstone of Fourth Amendment is reasonableness. Why is it reasonable for the police to decide that where they park their car defines the part of the curtilage they have license to enter? Because in order to get to the front door, they would have had to walk on more of the curtilage in order to get to the front door. So they have a right to go to the private part of the premises, the back door, because that way they trample on less grass. That's what you're arguing? What I'm arguing, Your Honor, is that police should not be robots. They should not follow a set-defined path that says, in every circumstance, you must go to the front door. Why not? Because I want my police officers to be reasonable, Your Honor. Well, what's unreasonable about saying, given the Fourth Amendment protection that we have, they've got to go to the front door unless something happens that either forgives that obligation or gives rise to a license that what a reasonable officer would assume would dispel that obligation and allow you to go to the side door. And there is that reasonable license in this case. The jury found that it was reasonable, given the circumstances, that the first – where they parked and where they were heading to, the first building that they came to was the garage, which looked occupied. So instead of even going to the house, they first stopped at the garage. That's a good point. What did they do when they got to the garage? They announced their presence and looked to see if it was, in fact, occupied. Carroll said he entered. He stuck his head in the garage. He poked his head in the garage to see if it was occupied. Why is the whole thing of the curtilage and the front door irrelevant because there's already been an entry into the garage before you even get to the side door? He was merely looking into the garage in order to see if it was occupied. He wasn't searching. They weren't looking for drugs and looking for – they were looking for an occupant. They were trying to do a knock and talk. They were searching for an occupant. They were searching for an occupant. Absolutely, Your Honor. In Marasco, we adopted the knock and talk doctrine, and, in fact, the officers there went to the front door first. How do you get around Marasco in this case? Well, I believe in – I think you're presenting an argument of expediency rather than a requirement. You really are. Expediency and convenience. Well, no, Your Honor. And therefore reasonable. You're arguing because it's expedient and convenient, it is therefore reasonable, which may apply outside the Fourth Amendment context, but that's really what you're arguing. I'm closest to the back door. Why should I trample the guy's lawn and go to the front door? It's easier and less of a trespass, less of an intrusion to go to the closest door, which happens to be the sliding glass door through which I can see into their kitchen and eating area. It's easier. Well, the facts of this that were found by the jury in this case was that the back porch and the sliding glass door appeared to be the customary entrance. That doesn't answer the question. One, I'm not that aggressive to get us to the jury charge I want to ask you about, but that doesn't really answer the question. Why isn't it true that the situation here is what Judge Fuentes just suggested, that what is the most convenient and the easiest becomes in Fourth Amendment parlance what is reasonable? That's what you're arguing. Well, what I'm arguing, Your Honor, and I hope I'm answering your question, is that what is reasonable is what would a reasonable officer have done, given the exact same circumstance. And given the restrictions of the Fourth Amendment. And given the restrictions of the Fourth Amendment, yes. Obviously, they couldn't go and search the entire backyard. They couldn't go through a gate. But this is not a situation in which they park in the front street, they bypass the front door, they go around back to look around, and then knock on the back door. Why isn't that exactly the situation we have? They could have parked in the front. They're saying, well, there's no place to park. Maybe it's different outside of Philadelphia, but I am not that familiar with the practice that police officers park only in areas that are allowed for parking. They park the car wherever they want to stop the car. You're saying they couldn't stop the car? You're not saying that. He couldn't park the car in front of the house because there was no place to park. He was in the street. He could have just pulled over and stopped right there. But, Your Honor, isn't that weighing the evidence and the credibility of the witnesses? No, I'm not saying he was dishonest in what he was saying, although he did say there was electricity in a garage that had no electricity. I'm not getting there. I'm simply saying that he said he couldn't park in front of the house. And I don't know why, given the limitations of the Fourth Amendment, he couldn't just stop the car and get off of it in front of the house. He decided to go to the back of the house, and I'm not faulting him for that. It looked like that's where the parking area was. That's fine. But the fact that he made that decision, it goes back to Judge Fuentes' earlier question. The fact that he took it upon himself and made that decision to park his car there rather than in front of the house and bypass the front door doesn't then somehow give him a license to treat the back door as the front door just because he happens to be closer because that's where he got out of his car. But that comes down to a fact question. The facts are not disputed. Everything I said to you is agreed. I think Mr. Diller would agree to it. It's consistent with Charles' testimony. That's what he said. I'm accepting his testimony as given. Yes. I do not read the Fourth Amendment as requiring police to violate traffic laws and park their cars in the front when there's no parking. How long are you going to be in Philadelphia today? Today? Well, I came in last night to avoid the... Okay, okay. It's nice to be there. Let's assume they don't violate the parking laws and they're going to only park the car in areas reserved for parking. Let's give them that. They're a little more civil than some of the constabulary I'm familiar with. But that still gets back to the point of does that decision on their part transform the nature, the private nature and the reasonableness of the expectation of privacy of that back door? Does that transform it somehow? Because that happens to be where they got out of their car. Yes, Your Honor. And the reason why is because based upon where the parking is, when you're looking at the house in order to get to the house, you have to go past the back door. You have to go through the back door. Why couldn't they have just retraced it? I'm not suggesting they had to do this, mind you. But given your position, they could have just retraced the steps in the street, just walked back along the pavement and then gone to the front of the house, never even setting foot in the side yard. Again, I'm not suggesting the law requires that. But given your argument, they could have done that. Well, yes, Your Honor. I mean, the question comes down to can the police get their feet wet. I'm sorry. Can the police get their feet wet? Can they touch the dew in the grass? And I'm not saying that in every situation that's appropriate. I'm just saying that the jury found in this situation that this was their approach to the house in order to do a knock and talk. What was the question to the jury? What do you mean the jury found that in this situation that's what the officer said was appropriate? Were they given a specific factual question in response? What the court gave the jury, and this wasn't part of the record, but it's Document 72 down below, do you find the defendant, Jeremy Carroll, unconstitutionally entered upon plaintiff's property and back deck? Now, this was based upon the jury instruction that the district court pulled language out of a State of Smith. And going back to the law, I know Judge McKee may have a question about the charge, but I wanted to ask you this thing. Every circuit that has looked at this issue of knock and talk, the three circuits, including ours in Morasco, the First Circuit, the Eighth Circuit, in two separate opinions, has said you've got to do the knock and talk first. I've yet to find a federal appellate court that has said, for expediency's sake, you might be able to go in the back door and ignore the front door. Could you respond to this weight of authority against you? Absolutely, Your Honor. What they were doing was a knock and talk. The question is not whether they were doing a knock and talk from our position. It was that they were engaged in the knock and talk. It was just a knock and talk to the back door. No, no. Knock and talk doesn't apply to the back door. It's a front door thing. It's so related to the Fourth Amendment and the expectation of privacy because of the old knocker thing. You know, we put the knocker on. It means this is where you're invited. This is where the postman can drop the mail. This is where, unfortunately, people can solicit. It's here, the front door. You've got to go there. Isn't that what the cases are saying? Well, the cases are saying that – And then, of course, if there is reasonable grounds to go beyond the front door to the back door, then you set forth the grounds. But you've got to go to the front door first is what I read these cases to say. I do not read the cases as – because the cases, first of all, don't specify what is the front door of every establishment. Well, you know what the front door is in this case. You're not arguing that they weren't sure where the front door was. No, Your Honor. But what I am arguing is that each case has facts that are specific to it. There is the layout of the property. There is where you're coming from. Let's look at the layout. Where was the sidewalk? I don't know that there was a sidewalk. Are you talking about the – Exhibit 20. 20? Exhibit 20, I think it is. Maybe it's 22. Are you talking about the gravel area? 22. 22. 22. What's the appendix page? I don't know. I just hit Find in Adobe, and it takes me there. Okay. At 22, I have it. 255. Okay, I see what you're saying. Yeah, the pathway to the porch. Yes, yes. Yes. In order to get there, they would have had to walk past the backyard. They would have to walk past the back deck. They would have had to walk past the side of the house in order to get to that pathway to walk to the front door. No, no. My picture must be wrong. They made a right turn onto the property owner's driveway. Yes. They were there looking at the side of the house. To the left was the deck. To the right was the porch. No, Your Honor. I clarify that for you. Okay. If you look on page 79 of the record. Give me the exhibit number. What is the exhibit number? It's not a picture because there is no picture of where they parked. It says that they parked at the far rear of the property. Now, this was past the house. This was past the carport. This wasn't at the side of the house where they had a decision. I can either go right to the front door or I can go left to the back door. It wasn't on the street. It was on the property itself. Oh, yes. Absolutely, Your Honor. It was they pulled in. They went past the house because of the cars. They continued going and they parked at the far rear of the property. But to get there, they must have gone through that porch with the stairs leading up to a center door. Well, they drove past it. Yes. And I'm late. Maybe I'm slow today because it was a full moon two nights ago. I'm still trying to figure out why the fact that they drove past the front door prevents them from walking back to the front door. And you're saying that it would have been more of an intrusion to do that even though the cases may require that initial attempt where it's more of an intrusion to do it. You can go to what is obviously the rear. Forget that. It's not obviously the back door. You can forget that intrusion where the officer on the scene concludes, well, that's the front door, but it's less intrusive for me to go to that door, the private living area. And it also appeared from the layout and the facts of the case that the back door was used by visitors and people who parked there. And I can point to the record where they testified to that. Well, even if it's used, that's an interesting... I know they did testify to that, but as I think about it, it seems to me that almost any side door, by definition, is used by visitors. Otherwise, you wouldn't need a door there. The door is there so people can come in and out of it. So, the fact that the door is used by visitors doesn't necessarily transform the side door or the back door. It really does look more like a back door than a side door. It doesn't transform the back door to the main entrance just because people also use the back door. There's a deck there. There's a sliding glass partition. Clearly, it's being used to come in and out of the house. But that goes to whether there is an implied consent that they expect people who park at the far rear of the property, when they're coming towards the house... To go to the back door. ...that they will go to the back door, yes. And the jury... They will go to the garage in the meanwhile. They thought it... It looked occupied. So, in... Did they have a right to do that? That's a concern I have also. Did they have a right to do that? Yes, Your Honor. Because that was the first... That was the first area which appeared occupied so that they could announce their presence. If Mr. Carmel... He didn't just announce his presence. He stuck his... He went in. Well, he poked his head in. Okay. He didn't go in. He poked his head in. I understand this was poking those. He said he poked his head in. But to be poking your head in, that's an entry. And there's no warrant. It's... All of the cases, even Marasco, which is very, very limited in scope, assumes a certain set of conditions. And if those conditions exist, then there's a right to go within the curtilage, to go to the front door, knock, and then if the charge was here, there may be circumstances after that, although the judge omitted what the circumstances would be, that would allow you to test the assumption that maybe there's somebody else around back. But all of them start from the proposition. Jardines does it. Marasco does it. Raines is a little bit different because that's the service of civil process. They all assume the officer is not going there as part of a search. The intent of the officer is not a search. In Supreme Court, that was the decision, the point of debate between the majority and the dissenting opinion because it read subjective intent into the officer's mind, which normally is not the case in Fourth Amendment jurisprudence. Justice Scalia read subjective intent in and said, look, if you're not going there to search, then you can do this. Here we have a case where the whole intent of going to the house is to search, and they never bothered to get a warrant. So I'm not even sure we need to get to the curtilage issue and the whole side door, back door, because the conditions under which they could do what you're arguing they had a right to do didn't exist. And those are the conditions, and I'm not even sure the jury charge that Mr. Diller asked for was specific enough in that regard. It would have directed the jury to what it had to do if there was a legitimate knock and search or knock and talk, but I'm not even sure we have the conditions we see into a legitimate knock and talk here. That's a lot to throw at you. I'm sorry, and your light is on, but feel free to take some liberty and some time to respond to that. May I respond? Please, yeah. Okay. I mean, ultimately, the question is, should this have gone to a jury or not? And I would disagree that their intent was to go and not do a knock and talk. They were searching for an individual, absolutely. Well, to me, they went to the house to search for somebody. To search for a person, yes. But they weren't going to do, they weren't, the search was to knock on the door and say, have you seen this person? He's fleeing the law, and this is an address that he's been known to be at. Have you talked to him? Do you know where he is? It was to do an investigation. Yes, they were searching for a person, but the purpose of this was to talk to somebody on the property. Now, in order to talk to someone on the property, they had to enter the curtilage, whether it be the front door or the back door. It's all curtilage. In order to get to the house, in order to knock on the door and speak with someone. I assume, Mr. Kirkpatrick, that there were no exigent circumstances. No, and we're not saying that there was. There was no warrant. There's no exigent circumstances. You're saying that the purpose was not to search, but when the first thing they did, the only thing they did once they got in the house, was search. They got consent to do that. But that was after. That was after they got there and it was with consent. No, I understand there was consent. That's not what I'm talking about. You're saying they didn't go to the house to search, but the only thing they did when they got in the house, there was some cordial conversation after the search, but once they got in the house, the only thing they did was search. And that's why they went there. They searched, which is what he said he went there for. Well, again, Your Honor, what I'm saying is not that they weren't looking for someone. I'm not saying that. I mean, they weren't. Well, why did they go to the house? You're saying they went to the house to look for him and not to search for him, even though it seems to me what they said was, they may not have used the magic word, they went there to search for him, although I think they did say that. They went there to look through the house to see if they could find him. Oh, no. I disagree with that. Okay. Why did they go to the house? They went to the house to talk to the people to see if they knew where he was. And they said, no, we don't know where he is. They said, they don't know where he is. And then the officer said, mind if we search? And the officer said, some guy just came out and was swearing at me. Do you mind if we search your house? Okay. And they said, yes. And so they searched the house. I mean, if... They said, no, they did not mind. I'm sorry. They did not mind. We have nothing to hide. Go in. Well, why shouldn't the jury have been told all this? This is coming directly out of Morasco, where officers are pursuing a lawful objective, unconnected to any search for the fruits or instrumentalities of criminal behavior. The entry into the courthouse after not receiving an answer at the front door might be reasonable as entry into the courthouse may provide the only practical way of attempting the conduct. And it seems to me the qualification language that I just read was what Mr. Diller asked for, and your objection to that was that it would have been tantamount to a directed verdict. Jardines has the same kind of qualification. Scalia puts the same qualifier on the language in Jardines. And I agree with you. The language may have led to a directed verdict, but the law... If you hold on a second, let me just look at that. That's not... Do you have an appendix number for that, for his directed verdict? For what I just read? Yeah, I think I just closed it. Well, here, let me... I have it here. You have the page? Well, no, I have my brief where I cite to the page, so I'm going to just pull that. Because I want to be clear on that. I don't want there to be any... Sorry. It rolls off because my computer's not doing what I want it to do. I can't get to the page reference. Well, if you just hold on a second, I'm trying to find my section where I talk about that. Because I cite to the directed verdict language that they wanted. It's okay. My paper isn't working for me either, so... I just got back to it. It's at 520. 520? Of the secondhand column. Oh, no, of the case. Yeah, no, I'm... Is that what you're looking for? No, I was looking for the actual language that they proffer to the court. Okay. Just wait a second. Okay, that's that. I apologize. Well, if you want to, you can do a 28-J letter. No, no, I... Here, 214.  Of the appendix. Okay. What they... This was the supplemental proposed jury instructions. They talk about it as undisputed. The defendant, Carroll, entered the property through the backyard, came to the back deck. By entering the backyard, they entered protective curtilage. Based on these facts, I instruct you that you must rule in favor of both Mr. Carman and Mrs. Carman with respect to defendant Carroll's entry onto the property. That's a directed verdict. That isn't a jury question. In the area protected by the Fourth Amendment, you must decide how much compensatory damage or punitive damage to the ward. So that is... We're not going to leave it up to the jury. This is not about whether the officers are reasonable. Read that again, I'm sorry. Can you read that again? Based on these facts, I instruct you that you must rule in favor of both Mr. Carman and Mrs. Carman with respect to defendant Carroll's entry onto their property in the area protected by the Fourth Amendment. Okay. So what I'm saying is not that... What I'm saying is that when you tell them... It could have been clearer. What he's asking for is a directed verdict. It isn't contested, but it could have been clearer because what you're saying that, yes, he entered under the curtilage, that does not get you a verdict. And I think he is saying with her background that given these circumstances, entry upon the curtilage results in a verdict. And there's, I think, an honest disagreement in how you look at that. Okay. But I guess my main point is that this was a reasonable determination. This was a jury question. It was up to the jury to decide. The instructions provided clarified what factors they were to consider, and they made their decision. Your emphasis is that it's reasonable because, correct me if I'm mistaken, the police parked the vehicle towards the rear of the house. Far rear. Far rear. And their view was already the back of the house. Yes, Your Honor. Meaning the deck. Yes, Your Honor. Okay. So, I mean, for purposes of analyzing Carroll's conduct, does it matter where the police parked the car, in the rear, or what if they parked it in the front? Well, I think that would have been a different case, Your Honor. Well, it is, but... No, but, I mean... Then it hinges on where the car is parked. If they park it in the front and they're looking at the porch in the front door, if they park it in the back, they're looking at the back of the porch, then the Fourth Amendment plays a really insignificant role. It matters where the car is parked as opposed to where the front door is. But, again, isn't the touchstone of the Fourth Amendment the reasonableness of the officers? So the reasonableness of the officers is dependent upon the factors presented to the officers. Then we're looking at things from their perspective. And we're looking at things from their perspective. So if you have a situation in which an officer parks in the front of the house and is walking towards the house and says... Then I can manipulate the entrance because then I can just park the car where I want to go in. If I want to go in the back, I'll park the car in the front. Oh, well, but then, again, that comes to the reasonableness. So if the jury finds... That's incredibly reasonable. I'm a police officer. It is the epitome of reasonableness. If I park in the front, I'm going to have to go in the front door. The good stuff's going to be in the back door. I don't park around the back, and that way I'm going to the back door. Nothing unreasonable about that is police practice 101. Why would I park in the front and restrict myself to go into the front door when I can go to see what's in the back door and have a better chance of finding something? So I'll just park in the back, and then it's reasonable for me to go to the back. But that would be a fact for the jury. You could put in front of the jury that there was plenty of parking in the front. They could have parked in the front where visitors always park, but they chose to go into the back in order to have access to the backyard. And that goes to the reasonableness analysis. Don't you think there should be some law that is pretty precise about this Fourth Amendment rather than leaving everything up to reasonableness? But then we're getting rid of the touchstone of the Fourth Amendment. We're saying you must be robots. We don't care what the layout of the house looks like. We don't care if there's gates or fences or whatnot. You must walk to the front door, as defined by us, in every single case, and you cannot knock and talk at any other door. Well, it's kind of, well, you've got to be discreet on that. Now, courts, I will admit courts use the term front door. But, again, I don't read any of those cases saying you must ignore all the factors, that this is an reasonableness test. You're right. They don't say that, but they say go to the front door first. If it's blocked, as in doused, then you can go to the side door. If you hear noise in the back or you see a sign in the front saying party in the rear, well, then you can go to the rear because in that case there's an implied license. You're being invited to go to the rear. In those kinds of cases, you clearly can go someplace else once you try to go to the front. What's dropping out of this conversation, it seems to me, again, is the intention of the officers. If they went there to search, and this is being from Jardines, when it comes up in the opinion about this issue that now, for the first time, there's a subjective reasonableness being read into the Fourth Amendment, which had not been there before. And the opinion says here, however, the question before the court is precisely whether the officer's conduct was an objectively reasonable search. As we have described, that depends upon whether the officers had an implied license to enter the porch, which in turn depends upon the purpose for which they entered. Now, why shouldn't the jury have at least been told that much, that you've got to look at what the motivation was for going to the back door? And even under your scenario, the jury could find, well, they went to the back door because it's the most convenient. I'm still not sure that's consistent with Jardines or with Morasco, but at least it's a charge which is much less misleading than the one that was given, which omitted crucial qualifications on the doctrine. We're not agreeing here, are we? No, the motivate, well, first of all, it's an objective reasonableness. Right, that's right, I misspoke when I said subjective. But second of all, and I don't, I mean, I'm really not trying to be cute with my words when I say that they went searching for an individual in the sense that they went to investigate whether these people knew where this guy was. So they, in order to do that, they have to talk to someone. And in order to talk to someone, they have to announce their presence in some fashion. And they chose a pathway to do that. And the question becomes, was that pathway to announce their presence, was that unreasonable given the circumstances? And a jury found it wasn't unreasonable. That, yes, again, we go to the garage, poking his head in, walking in, what have you. The reason they went to the garage was not because it was a garage, because it might have a car. They went to the garage because it appeared occupied. And so they wanted to talk to someone who lived there at the property. Now, if Mr. Carman would have been in the garage, and they would have poked their head in and said, Pennsylvania State Police, have you seen Mr. Zita? And he said, no. I know who you're talking about. He used to date one of my nieces. He hasn't been here. He's never been here. They would have left. Again, that's not what happened, but they went to the garage not to look for a car. They went to the garage to see if, because it appeared occupied and they wanted to talk to someone. When it wasn't occupied, they went to the next place that appeared, again, if there was gates up, if there was fences up, that's a different case. But they went to an entranceway that appeared to be used by people who parked. I mean, the analysis, quite frankly, is, and I swear what I come back to, is when I go to my dentist, there's a front door, and that's leading to a sidewalk. But there's no parking there. There's parking in back. So I drive into the back of the parking lot, and there's a back entrance, and you have to sort of walk through a cellar and everything in order to get to the lobby. Am I trespassing when I use that back exit? And the answer is no, because they expect people to use that. You know the drill. Exactly, Your Honor. So it's the implied consent that if you park here. He's been like that all morning. I don't mind. You don't have to live with him. But I will have to live with Your Honor's decisions. What I'm asking is that given that circumstance, there's implied consent that you can use the back door because we don't lock it, they don't put a sign up, because that's where you're parked. And what I'm saying in this case is based upon where they were parked, they took an avenue towards the house. The question is, was that objectively reasonable? And a jury answered that question in the affirmative. And this is not a criminal case where evidence is being asked to be suppressed. This is, was the conduct of the officer reasonable? And I think that the Fourth Amendment throughout time has said, well, that's a reasonable misdetermination. That's a question for a jury. And in this case, a jury. Well, I would argue that. You can't argue with that. That's not saying you have to concede that Mr. Diller's charge should have been given. No, no. I mean, the court was given what I would argue was a directed verdict. Some other people might argue otherwise. Obviously, it didn't contain all the factors Your Honor is thinking maybe it should. The language that the court did use came out of a state versus Smith. I don't believe that the court abused its discretion in using that language, especially if it would have been a situation where they were given better language, I suppose, and they refused to take it. I also don't believe the jury was confused. I don't think the jury was confused, oh, wait, backyards are now open gain. They realized in this case that based upon where it was parking, there was no expectation of privacy because that's what was in front of them, and they had to walk the length of that in order to get to the house, and that that was reasonable. That given the stairway from the parking area up into the back deck, that that was sort of the flow of traffic went up there, and it wasn't unreasonable for them to go to that door first to do the knock and talk rather than go around to the back of the front door. And quite frankly, given that, well, they never even actually got to the door because obviously Mr. Karman came out. I do not read, again, these cases as saying police are robots. They must always go to the front door. If front door is blocked, then reasonableness comes into the equation. I read it as saying, as a police officer, we expect you to be reasonable, and as a reasonable person, you look at this layout and the situation, and you decide where is the implied consent, where is the pathway that the homeowners expect visitors who are parked in the property to use. And in this case, the jury looked at that, and in this case, the jury made its decision, and I don't believe that that decision should be overturned lightly. Thank you, Mr. Chairman. Thank you, Your Honors. In response to the idea that it was a shorter distance to go to the back sliding door than the front door, well, no one has ever measured it. Well, that's not true. You can look at the pictures, and it does look like it's shorter. I don't think that's the point. But if you look at the pictures, it does look like a lot shorter. It may be somewhat shorter, but we're not talking about an estate here. This is a small property. So if it's 42 steps to the sliding door and 52 steps back to the front door, that does not somehow make entry into the backyard, onto the back deck, somehow reasonable because they say it's 10 steps. That is really the essence of the trooper's argument. I'm just curious. This is not that determinative of the case. Why didn't you ask Carroll if he went there to search? I'm sorry? Why didn't you ask Carroll if he went to the house to search? It gets very loose between investigate, speak with. But the picture that comes out of this fairly is that he wanted to see if Zita was in the house, and he wasn't going to accept a no from the occupant, the owner, without a search, which is reasonable. Why would he? The owner says, oh, he's not here. No officer's going to accept that if you can get a consent to search. Well, I guess I don't know why we didn't ask, did you go to that house to search? Well, I guess maybe I do know. It was obvious. There was no other purpose. He didn't go there to have coffee. Mr. Kirkpatrick says they went there to have a discussion with the owner to discuss it, to investigate, to see what the owner knew. Well, the dispatch report says he was there to, which was part of the evidence and is part of the appendix, says he was there to see if that person or that vehicle, I believe it just said the vehicle, was there. He saw by driving there the vehicle was not there. If he wanted to take a next step and look for the person, the law prescribes how to do it. But if he's there, you know, just to talk, then the law prescribes how you do that. You don't do it by trespassing in the back, by going on the back deck, and despite... What if they, and I asked you before if they saw somebody on the deck, what if they saw Mr. Karman in the garage? Well, if he saw... In the park back there, would they be entitled to go back there and see, investigate further? Well, the garage, just to talk to you a little factually... It's not much of a garage. Well, it's not much of a garage. It's a carport. It's an open... And it's right at the edge. You could be in the middle of the street, and if there's someone there, you can tell. So I'm not arguing facts when he says, I thought there was someone there. I mean, I can't say, no, he didn't think it, except that I'm saying, no, he didn't think it, because just like I can see you, he could see there is or isn't someone in the carport. Agreeing... Just suppose we agree with your position, you've got to go to the front door first, but that's not that firm. It's a firm rule, yes, but there are exceptions, right? There are exceptions. There are exceptions that you start towards the front door and say, uh-oh, we'd better check this out. I'm sorry? Uh-oh, I mean, we'd better check this out. There's a guy there in the garage. Maybe that's an exception. Well, if they want to go... What if I hear noise in the back? Well, they didn't hear noise in the back. I know that. We have quite an opinion. Yeah, exactly. Okay, well, if they heard noise in the back, it becomes, all of those facts become facts, issues about is this somehow licensed? Is the party back there? I suppose there's a reasonable suspicion of other activity in the back or something like that. And we're not talking about criminal activity, just activity. I don't know. Well, I think that if there were, you know, the July 4th party going on back there, I don't necessarily think it would be unreasonable, as Judge McKee said, not just if there were a sign that said, party in the back, come around. But if the facts suggested that that's really what was going on... If that's where the people were and the owner had totally invited them to the rear of the house. Yes. I'm not here to say that there could never be a time when you go to the back. But there have to be facts which tell you that. And when the district judge says, based on facts, there have to be facts. If I also could address, because I know that the court asked about the verdict slip. And it is not part of the appendix, although it was quoted accurately, and it's in Appellee's brief at pages 5 and 6. And on page 5, the three questions were... Well, you stipulate, because that's not really part of the record, where the brief is, but the factual contents in the brief. It's hard for us to accept that unless you agree that that's accurate. I do agree. I do agree. And the three questions on page 5, the district judge asks the jury to decide the constitutional issue. And that is not a jury question. The findings, whether Trooper Carroll did or did not unconstitutionally enter the Carmen's property and back deck, whether he unconstitutionally searched the Carmen's garage slash carport, whether he subjected Mr. Carmen to an unconstitutional seizure. So he is asking, the district court is asking the jury to decide the constitutional legal issues and not the factual issues. Is there some reason to believe that this is the normal path? Well, even if that descriptive language was taken out, you'd still have a very fundamental problem with the charge because of the omissions of the qualifier. You're right, there's a problem asking the jury to decide a constitutional question. But even absent that, there's a real problem, I believe you're arguing, with the way the qualifications of the knock and talk doctrine were not submitted to the jury. That's exactly right. That's exactly right. The cases say, knock on the front door. The judge didn't say that. The cases say, and the judge, the cases do use the word, there might be, it might be appropriate in certain circumstances to go to the back after knocking. Besides the fact that there wasn't knocking, the jury can't decide, is this one of those times when it might be appropriate? What about this question that Judge Fuentes asked? How do we write something that makes sense in this context and also applies to other contexts? What if there is somebody, even let's assume he parks in the front of the house, and as he's getting out of the car and walking toward the house, he sees the garage carport, sees somebody in there, so he starts to walk around toward the back and have a conversation. That's clearly beyond Jardines, and we're asking, what's wrong with that? Why isn't that reasonable? I guess I would suggest in response to how do we write this opinion, I would say... I know you want us to write it. You wanted the first paragraph to say... We reverse. We reverse. But after that, I think that the best way for this court to do it and for courts generally to do it is on the narrowest possible grounds. And so in this case, on these facts, and leave for another day, another factual situation where maybe there was some reason not to go to the front door. Mr. Kirkpatrick, I imagine, would like his clients to have some guidance on this area. It's a very amorphous area. Officers should have some basis to know what they can do in a situation like this. It's not very clear. I mean, that's true. And just from my perspective, I like that too. But going back 30 years to law school, I know that cases, the holding of the case, regardless of your language, is based on the facts. And I don't know that you could give it a broad, encompassing opinion that will govern every conceivable situation in the future. So we should drop a footnote right after the first sentence that says something like, see Diller on constitutional jurisprudence. I'd appreciate it. See also Kirkpatrick. But not necessary. But I think you could say these are the undisputed facts. There was a front door. There was a front path to the front door. There was no path in the back. The officers went to the side. They were a little closer to the back than the front. The trooper says that it was a shorter path, therefore that was the reasonable one. We reject that. We maintain the rule that knock and talk means go to the front door and knock, where there is implied license for police officers as well as Girl Scouts and pizza delivery men to go, absent some other circumstance which does not exist here. And that's ultimately what I think this opinion should, how it should define the law. Mr. Diller, thank you very much. Mr. Kirkpatrick, thank you very much.